UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DR. JOHN J. MURRAY, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | Case No. _____ |
| Vs. ) | |
| ) | |
| MEHARRY MEDICAL COLLEGE, ) | |
| ) | |
| DEFENDANT. ) | |

## COMPLAINT

Comes now the Plaintiff, Dr. John J. Murray (hereinafter "Plaintiff" and/or "Dr. Murray"), by and through his undersigned counsel, Bob Lynch, Jr., hereby sues the Defendant Meharry Medical College (hereinafter "Defendant" and/or "Meharry"), and sets forth his claims for relief as follows:

I. **INTRODUCTION:**

Plaintiff is seeking relief against the Defendant pursuant to Title VII of the Civil Rights Act of 1964 on claims of discrimination, including race, sex (gender), national origin and age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), in which the U.S. Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue Letter concerning Plaintiff's claim. (Attached hereto as Exhibit A, Notice of Right to Sue for EEOC No. 494-2018-03000).

In addition, the Plaintiff is seeking relief on state pendant claims of breach of contract.

II. **JURISDICTION AND PARTIES:**

1. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28

1

U.S.C. § 1343. This court has state pendant claim jurisdiction pursuant to 28 U.S.C. § 1367. This court has venue pursuant to 28 U.S.C. § 1391.

2. Plaintiff is a resident of Brentwood, Tennessee. He was initially employed by Meharry as a Professor of Internal Medicine/Associate Vice President of Clinical Research in 2006. On or about June 30, 2018, he was terminated by the Defendant.

3. Meharry Medical College is a Tennessee non-profit corporation with its principal office located at 1005 D. B. Todd Blvd, Nashville, Tennessee 37208. Its registered agent is Ms. Ivanetta Davis Samuels, who is listed at the same address.

4. Meharry Medical College employs more than 500 employees.

5. At all times material herein, the Plaintiff alleges that the doctrine of *respondeat superior* applies to the acts and omissions of Meharry's employees as alleged herein.

### III. SHORT AND CONCISE STATEMENT OF THE FACTS WITH RESPECT TO PLAINTIFF'S CLAIMS OF DISCRIMINATION AND BREACH OF CONTRACT:

6. On or about February 6, 2006, the Plaintiff was hired by Meharry as a tenured Full Professor and Associate Vice-President for Clinical Research with the understanding that upon the Board's approval, he would be fully tenured, which subsequently occurred.

7. Just prior to his employment at Meharry, Plaintiff was a highly renowned medical doctor and clinical researcher at Vanderbilt University Medical Center, where he was fully tenured. At that time, Vanderbilt's definition of academic tenure was and is as follows:

> "Academic tenure" at Vanderbilt refers to the University's commitment to continue any faculty member appointed as Professor or Associate Professor in that office, unless otherwise specified at the time of appointment, until the faculty member voluntarily terminates the appointment or until retirement or permanent

2

disability, or dismissal for cause.[1]

Plaintiff only agreed to Meharry's employment after being assured by the Defendant that his tenure there would be "kept whole" to his Vanderbilt tenure.

8. Plaintiff's duties at Meharry consisted of teaching medical students/residents, conducting and overseeing clinical research and clinical duties. Plaintiff was appointed as Director of Clinical and Translational Research Center (hereinafter "CTRC") in 2010.

9. Since February 6, 2006 until June 30, 2018, Plaintiff fully performed his duties and met Meharry's expectations as a medical doctor, professor, Dean and/or Associate Vice-President and Director of CTRC.

10. In particular, at the time of Plaintiff's termination, his duties at Meharry included being a principal investigator for many clinical research trials, including private, pharmaceutical, and federally funded clinical research. In addition, Plaintiff submitted and oversaw human research applications for an institutional research board; prepared budgets; developed policies and procedures for clinical trials; administered and operated the CTRC; and supervised a diverse team of staff who carried out clinical trials, tissue acquisition, and biospecimens collections for a variety of research programs, resources and clinical research operation functions.

11. As Director of the CTRC, Plaintiff provided the management of the operational and

---

[1] *See* Faculty Manual for Vanderbilt University, Part II Appointment and Tenure, "Chapter 3: Principles, Rules, and Procedures for Promotion and the Award of Tenure," https://www.vanderbilt.edu/faculty-manual/part-ii-appointment-and-tenure/ch3-principles-rules-and-procedures-for-promotion-and-the-award-of-tenure/

budgeting needs of the Center, and oversaw all clinical research operations, data management, regulatory compliance, quality assurance and safety, and the integration of research into clinical operations or scientific review. Plaintiff's duties also required a Board Certificate in order that he could recruit, evaluate and/or treat any of the patients affiliated with the hospital for clinical research trials as well as have access to medical information or order any tests/procedures as mandated by the by-laws of the hospital. To the extent that Plaintiff engaged in professional duties, this involved direct interaction with medical and graduate students and postgraduate students concerning clinical and basic research both in the classroom and in the clinical setting.

12. On or about June 22, 2016, the Plaintiff entered into a written contract, with tenure, with Meharry, which term was from July 1, 2016 through June 30, 2017. (A copy of the Faculty Contract Renewal is attached hereto as Exhibit B). The parties orally extended the contract because the Plaintiff continued his employment on the same terms and conditions as his written contract as extended by written communication from Meharry to Plaintiff dated April 10, 2017; July 20, 2017; and March 19, 2018. (A copy of the Memorandum and emails are attached hereto as Collective Exhibit C).

13. On or about March 1, 2017, Meharry hired Dr. Veronica T. Mallett (who is a Black female and is approximately 61 years old) as Senior Vice President for Health Affairs, and Dean, School of Medicine ("Dean Mallett"). Unbeknownst to Plaintiff, Dean Mallett conducted a review of his past job performance and falsely claimed that he was underperforming based on his alleged failure to secure funding sources for clinical research and alleged poor management skills.

14. Meharry did not inform Plaintiff that his job performance was under review. Plaintiff first learned of Meharry's claim of job underperformance as the reason for the non-renewal of his contract when he received Meharry's response to his EEOC complaint on or about January 15, 2019, which was several months after his termination and when he obtained said documents under the Freedom of Information Act ("FOIA"). No documentation of underperformance or this alleged review was found in the Plaintiff's personnel file in response to the EEOC's request.

15. On or about March 2, 2018, Plaintiff met with Dr. Richard Fremont, Interim Chair of Internal Medicine, and Mark Smith, Director of Human Resources, who presented Plaintiff with a personal and confidential letter informing him that his faculty appointment "…will not be renewed as the needs of the program have been re-evaluated." The date of Plaintiff's non-renewal was effective June 30, 2018. (Attached hereto as <u>Exhibit D</u>, March 2, 2018 Letter). Notwithstanding this claimed reason, the program has remained the same at Meharry.

16. Plaintiff timely filed a grievance on April 30, 2018, pursuant to Meharry's Grievance Procedure. (Attached hereto as <u>Exhibit E</u>, April 30, 2018 Grievance Letter). The grievance, among other things, pointed out that Meharry had failed to comply with its own procedure concerning the non-renewal of Plaintiff's contract, which provides:

> "When a recommendation or a decision not to renew an appointment has been reached, the faculty member involved will be informed in writing of that decision by the appropriate dean. The faculty member shall be advised orally and in writing of the reasons, which contributed to that decision. Except for dismissal for adequate cause, notice of non-renewal shall be no less than one (1) year."

> (*See* <u>Exhibit E,</u> p. 1).

Not only did the Plaintiff not receive the one-year notice of non-renewal, as stated in

the grievance, but no one at Meharry could tell Plaintiff the reason why his contract was not being renewed. Plaintiff alleges that the reason why his contract was not renewed was because of the discrimination as alleged herein. Plaintiff further alleges that the Defendant breached his tenure agreement. Both of these breaches of contract were done to further Meharry's discrimination against Plaintiff by hiring a less-qualified person outside of his protected classes to replace him.

17. On May 14, 2018, the Grievance Committee at Meharry responded to Plaintiff's April 30, 2018 Grievance Letter. (Attached hereto as <u>Exhibit F</u>, May 14, 2018 Grievance Committee Letter). Although Meharry's response letter disputed that Plaintiff had tenure or that it violated the Academic Appointment, Promotion and Tenue Policy ("APT") Guidelines, it provided the Plaintiff with a notice of non-renewal and it recognized the "outstanding service Dr. Murray has provided to the College…" Most importantly, it did not state a reason for the non-renewal of Plaintiff's contract as stipulated in the Defendant's guidelines.

18. Meanwhile, on May 10, 2018, the Plaintiff, pursuant to Meharry's Grievance Procedure, submitted a copy of the April 30, 2018 Grievance Letter via email to the President of Meharry, Dr. James Hildreth, and sought an explanation for the non-renewal of his contract. Dr. Hildreth did not respond to Plaintiff's email. (Attached hereto as <u>Exhibit G,</u> May 10, 2018 email).

19. Plaintiff alleges that Meharry failed to seriously consider his grievance because it had already offered the position of Director of the CTRC, along with other duties, to his replacement, Dr. Brenda Yvette Lemus ("Dr. Lemus"), in a letter dated May 4, 2018. Plaintiff obtained this offer letter from the EEOC via a request under the FOIA. This

6

letter sets forth Dr. Lemus's duties to include Director of CTRC, along with other duties for which Plaintiff was performing.

20. Plaintiff alleges that Dr. Lemus is either not qualified or much less qualified than Plaintiff to assume his position and duties at Meharry, including Director of CTRC, because, among other things, she has no significant clinical research experience nor is board certified. More importantly, while Plaintiff has generated substantial medical research grants while at Meharry, which directly benefitted the Defendant, Dr. Lemus has no history of applying for or receiving such grants.

21. Plaintiff alleges that Dr. Lemus is much less qualified than him with respect to his position and duties of Dean, Professor and as a practicing physician, all of which are necessary and sufficient to effectively operate and manage the CTRC.

22. Because the review of Plaintiff's job performance by Dean Mallet and the recruitment of his replacement was done without his knowledge, Plaintiff reserves the right to amend this complaint if additional claims or matters arise from discovery.

23. Meharry's stated reason to the EEOC for its failure to renew Plaintiff's contract was and is a pretext and directly contradicts its position in its May 14, 2018 response to Plaintiff's Grievance Letter, where Meharry describes Plaintiff's service as "outstanding" and does not specifically state why he was terminated (*see* Exhibit F).

24. Plaintiff alleges that his summary of services to Meharry as set forth in his April 30, 2018 Grievance Letter is not disputed by Meharry in its May 14, 2018 response and also demonstrates that Meharry's post-employment reason for the non-renewal of his contract is a pretext.

25. On June 4, 2018, Dean Mallett hired Plaintiff's replacement, Dr. Brenda Yvette

7

Lemus ("Dr. Lemus"), as Assistant Professor of Professional and Medical Education and Senior Associate Dean for Clinical Research, including Director of CTRC. Dr. Lemus is a Hispanic female and approximately 45 years old.

26. Plaintiff alleges that Dr. Lemus is not qualified or much less qualified to replace him at Meharry, including Director of CTRC, because, among other things, she is not certified to conduct the necessary clinical practice and research to effectively operate the Clinical Research Center.

27. Plaintiff alleges that he was terminated so a lesser qualified, Hispanic female that is 20 plus years younger than him, could be hired to replace him at Meharry.

28. Plaintiff alleges that his termination and replacement by Meharry constitutes discrimination against him due to his race (Caucasian/non-Hispanic), sex (Male), and national origin (American/non-Hispanic) in violation of Title VII of the Civil Rights Act of 1961, as amended; and his age (67 years) in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended.

29. In addition and alternatively, Plaintiff alleges that the Defendant discriminated against him in that it treated similarly situated employees outside of his protected classes more favorably than him.

30. In addition and alternatively, Plaintiff alleges that Meharry treated him differently from others, who were similarly situated, and that no rational basis exists for said treatment. Therefore, Plaintiff alleges that he is a "class of one."

31. The events described herein have caused the Plaintiff extreme embarrassment, humiliation and mental distress, which has manifested itself by Plaintiff suffering anxiety, depression, loss of sleep, physical fatigue and other physical and mental

ailments.

32. Although Plaintiff has obtained new employment as a medical doctor, he has sustained loss of earning capacity because of the wrongful termination from his position in academia. Plaintiff has been unable to continue employment in his specialty area of clinical research that he focused his career on for over 40 years.

33. Plaintiff has exhausted his federal administrative remedies and on August 21, 2019, the EEOC issued a Notice of right to Sue Letter, which is attached hereto as <u>Exhibit A</u>, based on the Charge of Discrimination he filed with the EEOC. (Attached hereto as <u>Exhibit H</u>, Charge of Discrimination).

34. Plaintiff alleges that his termination constitutes a breach of contract because he was not given a one year notice that his contract with Meharry would not be renewed, and that his termination, effective June 30, 2018, was done in violation of his contract and/or his tenure agreement. Defendant has an implied duty of good faith and fair dealing under the contract with Plaintiff, which it has breached based on the facts set forth herein.

35. Plaintiff alleges that the acts and omissions of the Defendant as alleged herein were done intentionally, maliciously and fraudulently for the purpose or desire to discriminate against the Plaintiff as alleged herein; or recklessly done because of the Defendant consciously disregarding the substantial and unjustifiable risk of injury caused to the Plaintiff by its discrimination as alleged herein.

**WHEREFORE**, the Plaintiff prays for the following relief:

1. With respect to Plaintiff's claims of discrimination:

a. Compensatory damages for embarrassment, humiliation and mental distress in an amount to be determined by the jury, or $300,000;

b. Punitive damages in an amount to be determined by the jury, or $300,000;

c. Back pay and the present value of any lost employment benefits;

d. Reinstatement, or, if not practical, front pay, including benefits, to make Plaintiff whole;

e. Liquidated damages permitted by law to be determined by the jury;

f. Attorney's fees and costs;

g. Prejudgment interest;

h. All equitable and general relief to which Plaintiff is entitled; and

i. A jury of six (6) to hear this cause.

2. With respect to the Plaintiff's claim for breach of contract:

a. Compensatory damages, in an amount to be determined by the jury, to place Plaintiff in as good as a position as he would have been but for the Defendant's breach;

b. Prejudgment interest;

c. All equitable and general relief to which Plaintiff is entitled; and

d. A jury of six (6) to hear this cause.

Respectfully Submitted,

*/s/ Bob Lynch, Jr.*
**Bob Lynch, Jr. (BPR# 6298)**
Washington Square, Suite 316
222 Second Avenue North
Nashville, TN 37201
615-255-2888
Email: office@boblynchlaw.com

10

Case 3:19-cv-00925   Document 1   Filed 10/21/19   Page 10 of 10 PageID #: 10