IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DR. JOHN J. MURRAY, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:19-cv-00925 |
| MEHARRY MEDICAL COLLEGE, | ) JUDGE CAMPBELL |
| | ) MAGISTRATE JUDGE HOLMES |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. No. 43) and Defendant's Motion for Summary Judgment. (Doc. No. 48). The parties filed responses in opposition to each other's motions (Doc. Nos. 55, 57), but only Plaintiff filed a reply. (Doc. No. 59). For the reasons discussed below, the parties' motions (Doc. Nos. 43, 48) will be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dr. John J. Murray ("Dr. Murray") began working for Defendant Meharry Medical College ("Meharry") in 2006 as a Professor in the Internal Medicine Department and Associate Vice-President for Clinical Research. (Doc. No. 56 ¶ 1). In 2010, Meharry appointed Dr. Murray Director of its Clinical and Translational Research Center. (*Id*. ¶ 5). On March 2, 2018, Meharry notified Dr. Murray that his faculty appointment would terminate on June 30th and not be renewed because the needs of the program had been re-evaluated. (*Id*. ¶¶ 18, 19; Doc. No. 58 ¶ 1; Doc. No. 1-4). Dr. Murray asked his supervisor and Meharry's Associate Vice-President of Human Services why his contract was not being renewed, but neither of them knew the reason. (Doc. No. 56 ¶ 17; Doc. No. 58 ¶ 6; *see also* Doc. No. 51-5 at PageID # 1243).

After notifying Dr. Murray of his non-renewal, Meharry recruited Dr. Brenda Lemus, a 47-year-old, Hispanic, female, to be Director of the Clinical and Translational Research Center. (Doc. No. 58 ¶ 16; Doc. No. 47-1 at PageID #548-49). Meharry could have moved an existing faculty member to serve as Director of Clinical and Translational Research Center but decided not to. (Doc. No. 56 ¶¶ 37, 67). In June 2018, Meharry hired Dr. Lemus as Director of the Clinical and Translational Research Center, an Assistant Professor in the Professional and Medical Education Department, and Assistant Dean of Clinical Research. (*Id*. ¶¶ 59, 60, 65).

Dr. Murray filed this action against Meharry on October 21, 2019, alleging claims of breach of contract, and race, sex, national origin, and age discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and of the Age Discrimination in Employment Act of 1967 ("ADEA"). (Doc. No. 1). On June 9, 2021, Dr. Murray moved for partial summary judgment on his discrimination claims, and Meharry moved for summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving

party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). "The standards ... for summary judgment do not change when, as here, 'both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

### III. ANALYSIS

#### A. Title VII and ADEA Discrimination

Dr. Murray claims that Meharry discriminated against him because of his age (67) and on the basis of race (white), sex (male), and national origin (American/non-Hispanic) when it terminated his employment and replaced him with Dr. Lemus, a 47-year-old, Hispanic, female. Title VII prohibits employers from discriminating against individuals on the basis of race, sex, and national origin. 42 U.S.C. § 2000e–2(a)(1). The ADEA prohibits employers discriminating against individuals "because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of discrimination under Title VII and the ADEA,[1] a plaintiff must show that: (1) they are a member of a protected group; (2) they were subjected to an adverse employment decision; (3) they

---

[1] "Generally, discrimination claims brought under Title VII and the ADEA are analyzed under the same framework." *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).

were qualified for the position; and (4) they were replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021). Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for their decision. *Smith v. City of Toledo, Ohio*, 13 F.4th 508, 515 (6th Cir. 2021). The burden then shifts back to the plaintiff to show that the reason the employer gave "was not its true reason, but merely a pretext for discrimination." *Id*.

1. Qualified for the Position

Meharry argues that Dr. Murray was not qualified for Director position of its Clinical and Translational Research Center because the Dean of its School of Medicine determined that Dr. Murray was underperforming. (Doc. No. 49 at 13). However, "[a]t the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (emphasis in original). Objective criteria that courts may consider in determining whether a plaintiff can satisfy the qualification prong of their *prima facie* case include the employee's "education, experience in the relevant industry, and demonstrated possession of the required general skills." *George v. Youngstown State Univ.*, 966 F.3d 446, 464-65 (6th Cir. 2018) (quoting *Wexler*, 317 F.3d at 576). Meharry does not claim that Dr. Murray lacked such qualifications, and the record shows Dr. Murray worked for Meharry as a Professor and Associate Vice-President for Clinical Research for over twelve years and as Director of the Clinical and Translational Research Center for over seven years until his termination. Accordingly, the Court finds that Dr. Murray has satisfied his *prima facie* burden of proof as to the third element of his discrimination claims.

### 2. Replaced by Someone Outside of Protected Class

Meharry argues that Dr. Murray was not replaced, asserting that his termination was part of a broader reduction in force. (*See* Doc. No. 49 at 13). If the termination arises as part of a work force reduction, the Sixth Circuit has modified the fourth element to require the plaintiff to offer "evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990); *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536–37 (6th Cir. 2014). Accordingly, the Court must "determine whether [Dr. Murray]'s position was eliminated as part of a reduction in force[.]" *Pierson*, 749 F.3d at 537.

"A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes*, 896 F.2d at 1465. The determination of whether an employee's job was eliminated turns on whether another employee absorbed the terminated employee's duties in addition to other duties, or if another employee is hired or reassigned to perform the plaintiff's duties. *See id*. An employee is replaced when another employee is hired or reassigned to perform the plaintiff's duties. *See id*. Here, Meharry asserts that Dr. Lemus did not replace Dr. Murray because their respective job duties had limited overlap. (Doc. No. 49 at 14). In support, Meharry produces Dr. Murray's 2016-2017 contract and Dr. Lemus' 2018 contract – noting that their respective allocations of time were divided differently. On the other hand, Dr. Murray points to evidence that Meharry did not eliminate the Director position for the Clinical and Translational Research Center in June 2018. (Doc. No. 55 at 5 (citing Doc. No. 47-13 at PageID #631); *see also* Doc. No. 58 ¶ 19). Additionally, Dr. Murray produces an email dated two weeks before his effective termination date, in which he is informed of the transition between himself and Dr. Lemus at the Clinical and Translational Research Center. (*See*

5

Doc. No. 58 ¶ 18). It is undisputed that Dr. Lemus became the Director of Clinical and Translational Research Center in June 2018. (Doc. No. 56 ¶ 65). Moreover, it is undisputed that Meharry could have moved an existing faculty member to serve as Director of the Clinical and Translational Research Center but decided not to. (*Id*. ¶¶ 37, 67).

The Court finds that there are genuine disputes of material fact as to whether Dr. Murray's position was eliminated as part of a reduction in force. Thus, Dr. Murray does not need to present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [him] out ... for discharge for impermissible reasons", *Barnes*, 896 F.2d at 1465, but he only bears the burden of proving only that he was replaced by someone outside of the protected class. *See Pierson*, 749 F.3d at 539. Dr. Murray has presented evidence from which a reasonable jury could conclude that Dr. Lemus, a 47-year-old Hispanic woman, replaced him, a sixty-seven-year-old, non-Hispanic, white man. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) ("Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of [an] age discrimination prima facie case."). Accordingly, Dr. Murray has satisfied his *prima facie* burden of proof as to the fourth element of his discrimination claims.

3. Pretext

Meharry claims that Dr. Murray was terminated because it had re-evaluated the needs of the program. (*See* Doc. No. 57 at 9; Doc. No. 56 ¶ 19). Because Meharry put forth a legitimate, nondiscriminatory explanation, the burden shifts back to Dr. Murray to identify evidence from which a reasonable jury could conclude that the proffered reason is actually pretext for discrimination. An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the

6

stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014).

To show pretext, Dr. Murray points to Meharry's response to his EEOC charge, (Doc. No. 47-1), stating that he was terminated because Dean Mallett identified him as underperforming based on his failure to secure new funding sources for clinical research. (*See* Doc. No. 44 at 13). Dr. Murray points to evidence that he brought over $15 million dollars in funded grants to Meharry, (*Id*. at 14 (citing Doc. No. 46 ¶ 4; Doc. No. 46-3)), arguing that a reasonable juror could infer from the foregoing that Meharry's stated reason for his termination had no basis in fact. Dr. Murray also notes that Meharry's response to his EEOC charge does not claim that he was terminated because of a reduction in force as it now argues on summary judgment. (*See* Doc. No. 55 at 4). "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 513 (6th Cir. 2021) (citation omitted). Additionally, Dr. Murray points to evidence that Meharry paid Dr. Lemus a salary that was higher than Dr. Murray's for the same position (Doc. Nos. 47-6; 47-7), arguing that it shows her hire was not cost-effective as claimed by Meharry.

As previously noted, Meharry did not file a reply in support of its motion for summary judgement. The Court finds that a reasonable jury could determine that Meharry's proffered reason was pretext for discrimination. Accordingly, Meharry's and Dr. Murray's motions for summary judgment will be denied as to the discrimination claims.

**B. Breach of Contract**

Dr. Murray claims that Meharry breached the parties' contract and its duty of good faith and fair dealing when it terminated his employment without providing one year's notice of nonrenewal. (Doc. No. 1 ¶¶ 16, 34). To establish a claim for breach of contract under Tennessee

7

law, a plaintiff must show (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach. *See Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). Meharry argues that there was no contract in place at the time of Dr. Murray's nonrenewal in 2018 because Dr. Murray's contract expired on June 30, 2017 (Doc. No. 49 at 19).[2] According to Meharry, "[f]rom July 1, 2017, until June 30, 2018, [Dr. Murray] did not have an employment contract[.]" (*Id.*).

Dr. Murray argues that there is a genuine issue of material fact as to whether he had a contract with Meharry in 2018 because he continued to work under the same terms and conditions of his 2016-2017 agreement up to and after the time of his 2018 nonrenewal. (Doc. No. 55 at 13-14). As correctly noted by Dr. Murray, "[t]he law is clear in the state of Tennessee that when parties continue to perform the same services after a contract for a definite term has expired, it is presumed that 'they are operating under a new contract having the same terms and conditions as the original one.'" (*Id.* at 14 (quoting *BSG, LLC v. Check Velocity, Inc.*, 395 S.W.3d 90, 91 (Tenn. 2012)). The Court finds that there is a genuine dispute of material fact as to whether Dr. Murray and Meharry had an enforceable contract in 2018. Accordingly, Meharry's motion for summary judgment will be denied as to the breach of contract claim.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Meharry also asserts that Dr. Murray cannot establish damages caused by the alleged breach because he immediately obtained new employment that exceeded his compensation at Meharry. (Doc. No. 49 at 19-20). The Court declines to consider this undeveloped argument, as it is unsupported by any citation to legal authority.